United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 18, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 03-20411

---

MICHAEL HAGGERTY,

                                   Plaintiff-Appellee,

      versus

TEXAS SOUTHERN UNIVERSITY; ET AL,

                                   Defendants,

W WILLIAMS, Individually and in
His Capacity as a Texas Southern
University Campus Police Officer,

                                   Defendant-Appellant.

---

Appeal from the United States District Court
for the Southern District of Texas

---

Before GARWOOD, WIENER and DeMOSS, Circuit Judges.

GARWOOD, Circuit Judge:

Defendant-appellant Willie Williams, a Texas Southern University Police Officer, appeals the partial denial of his motion for summary judgment based on qualified immunity. We affirm in part and reverse in part.

Plaintiff-appellee Michael Haggerty brought several claims for damages against Williams in his individual capacity based on 42 U.S.C. § 1983 and Texas law.[1] Williams sought summary judgment based on qualified immunity respecting Haggerty's section 1983 claims and based on official immunity respecting Haggerty's state law claims. The district court denied summary judgment on Haggerty's claims under section 1983 for false arrest/false imprisonment, excessive force, and malicious prosecution and on Haggerty's claims under state law for false imprisonment and malicious prosecution.[2]

**Discussion**

### I. *Jurisdiction over this Appeal*

"Denial of summary judgment on the ground of qualified immunity is immediately appealable to the extent that the question

---

[1] Haggerty's petition does not clearly define his claims. His claims consisted of violations of 42 U.S.C. § 1983 and false imprisonment, malicious prosecution, and assault and battery, but Haggerty did not define his § 1983 claims in detail or clearly differentiate between his § 1983 and state law claims. For instance, in Haggerty's response to Williams's motion for summary judgment, Haggerty recounted the allegations in his petition, declaring that Williams had "purposely deprived [Haggerty] of his rights . . . afforded by the 4th, 5th and 14th Amendments to the United States Constitution and the Texas Constitution, in violation of 42 U.S.C. § 1983, and that such conduct toward [Haggerty] constituted false imprisonment, malicious prosecution and assault and battery"; however, Haggerty did not specifically state whether any (or which) of these claims were based on state law.

In ruling on Williams's motion for summary judgment, the district court divided the claims between § 1983 claims (false arrest/false imprisonment, excessive force, and malicious prosecution), and state law claims (assault and battery, state constitutional claims, false imprisonment, and malicious prosecution). At oral argument before this court, the parties agreed with the district court's categorization of Haggerty's claims.

[2] The district court initially granted summary judgment on Haggerty's § 1983 excessive force claim and his state law assault and battery and constitutional tort claims. Later on rehearing, however, the district court reinstated the 1983 excessive force claim.

2

on appeal is whether the undisputed facts amount to a violation of clearly established law." *Kelly v. Foti*, 77 F.3d 819, 821 (5th Cir. 1996).

## II. Qualified Immunity and Claims Under § 1983

We review *de novo* the denial of summary judgment predicated on qualified immunity. *Beltran v. City of El Paso*, 367 F.3d 299, 302 (5th Cir. 2004). In an interlocutory appeal in which the defendant asserts qualified immunity, to the extent that the district court found that genuine factual disputes exist, we accept the plaintiff's version of the facts (to the extent reflected by proper summary judgment evidence) as true. *Id.*

We use a two-step approach to analyze qualified immunity claims. *Price v. Roark*, 256 F.3d 364, 369 (5th Cir. 2001). First, we "consider whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right." *Id.* (citing *Saucier v. Katz*, 121 S.Ct. 2151, 2156 (2001)). If the plaintiff's allegations could make out a constitutional violation, we then "ask whether the right was clearly established—that is, whether 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Id.* (quoting *Saucier*, 121 S.Ct. at 2156). "If, upon viewing the evidence in the light most favorable to the [plaintiff], reasonable public officials could differ on the lawfulness of the defendant's actions, the

3

defendant is entitled to qualified immunity." *Southard v. Tex. Bd. of Criminal Justice*, 114 F.3d 539, 550 (5th Cir. 1997). This inquiry is an objective one, not dependant on the particular officer's subjective beliefs. *Anderson v. Creighton*, 107 S.Ct. 3034, 3040 (1987).

### A. False Arrest/False Imprisonment Under Section 1983

To ultimately prevail on his section 1983 false arrest/false imprisonment claim, Haggerty must show that Williams did not have probable cause to arrest him. *See Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001) ("The 'constitutional torts' of false arrest . . . and false imprisonment . . . require a showing of no probable cause."). Probable cause exists "when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001) (internal quotation and citation omitted). Therefore, Williams is entitled to qualified immunity if a reasonable officer in his position could have believed that, in light of the totality of the facts and circumstances of which Williams was aware, there was a fair probability that Haggerty had committed or was committing an offense. *See id.; see also United States v. Watson*, 273 F.3d 599, 602 (5th Cir. 2001) (explaining that probable cause's "fair probability" requires more than a bare suspicion but less than a

4

preponderance of evidence). "Even law enforcement officials who reasonably but *mistakenly* conclude that probable cause is present are entitled to immunity." *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th 2000) (emphasis added) (internal quotation and citation omitted); *see also Anderson v. Creighton*, 107 S.Ct. 3034, 3039-40 (1987) (". . . it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials – like other officials who act in ways they reasonably believe to be lawful – should not be held personally liable"). In sum, Haggerty "must clear a significant hurdle to defeat [William's] qualified immunity." *Brown*, 243 F.3d at 190. "[T]here must not even arguably be probable cause for the . . . arrest for immunity to be lost." *Id.* (internal quotation and citation omitted).

Haggerty was arrested for interference with the duties of a public servant. *See* TEX. PENAL CODE ANN. § 38.15(a)(1) (2004). "A person commits an offense if the person with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with . . . a peace officer while the peace officer is performing a duty . . . ." *Id.* However, "it is a defense" that the alleged "interruption, disruption, impediment or interference" "consisted of speech only." § 38.15(d).

5

Viewing the facts in the light most favorable to Haggerty and based on the totality of the circumstances within Williams's knowledge, a reasonable officer in Williams's position could have believed with "fair probability" that Haggerty had interfered with his duties. Haggerty claimed in his affidavit that on July 27, 2000 Kendrick Randolph, a student from Haggerty's group who allegedly had just been attacked (by eight males, according to Haggerty's response to the motion for summary judgment) in the cafeteria of Texas Southern University (TSU), "was out of control and was trying to fight all those that had jumped on him." When Haggerty went outside, he saw Williams handcuffing Randolph; he told Williams not to handcuff Randolph and that he was Randolph's teacher.[3] Haggerty acknowledges that Williams told him to "step back or get away and if [he] didn't [he] would be put under arrest."[4] Haggerty claims to have stepped back without touching Williams.

Williams then took Randolph back into the TSU student center. Randolph saw some of the individuals who had attacked him and began pulling away from Williams to again combat those individuals. When Haggerty went back into the student center, he saw Williams slam Randolph into a wall. Haggerty claims that he then "took a few

_____

[3] Haggerty alleged in his petition that he "rushed outside" and told Williams not put Randolph in handcuffs.

[4] Haggerty alleged in his petition that Williams advised him to "stay away" and that he would be arrested if he interfered.

steps forward, but never got closer than 10–15 feet to . . . Williams" and said "don't do that, don't slam that boy into the wall" and "don't manhandle that juvenile."[5]  Haggerty states that he was not cursing, but "was speaking up loudly."  He also observed "many young children and others seeing [what] was going on." Williams then said something that Haggerty cannot recall, and "the next thing I (Haggerty) recall" is several other officers (not Williams) tackled Haggerty.

Thus, viewing the totality of circumstances in the light most favorable to Haggerty, but from the perspective of a reasonable officer in Williams's position, we have: police called because Haggerty concluded he and TSU staff could not handle the matter (see note 6, *infra*), an out-of-control victim/witness/suspect (Randolph) who was occupying Williams's efforts and attention, a nearby group of some eight alleged attackers, an approaching person in relative proximity to Williams (Haggerty)—who had previously been told to "step back" and that he would be arrested if he did not—speaking loudly and telling Williams to stop, and a gathering crowd.  A reasonable officer in Williams's position could have believed that the situation was tense and dangerous, Haggerty's actions were serving to stir up the potentially explosive

---

[5] Haggerty alleged  in his petition that when he saw Williams slam Randolph against the wall, "he stepped forward and stated loudly 'stop, stop don't do that, that's wrong!'"

situation,[6] and there was a fair probability that Haggerty's actions constituted interference with his duties.

Further, while Haggerty's relevant actions included speech, a reasonable officer could have believed that they were not *limited* to speech: Haggerty stepped forward toward Williams after having previously been warned to not interfere and was within relative proximity (10 to 15 feet away). Under the circumstances, it is not unreasonable that an officer could have believed that this constituted more than "speech *only*" and that the statutory defense of section 38.15(d) was not established. As "law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity," *Mendenhall*, 213 F.3d at 230 (internal quotations and citations omitted), it is not determinative that Haggerty's interruption, disruption, impediment or interference could ultimately be determined to have been by

---

[6] Haggerty claims that the situation was not potentially violent *because* "this was a college campus not [t]he back streets of Third Ward and there were youth participants, educators, TSU staff and employees looking in shock at what was going on." This claim by Haggerty from *his point of view*, however, is not controlling to our qualified immunity analysis in that it does not determine what a reasonable officer *in Williams's position* might have believed. Indeed, Haggerty's affidavit states respecting the original cafeteria confrontation "I along with other PIP staff tried our best to stop it. When I realized we couldn't stop it I told Texas Southern Cafeteria staff to call the Texas Southern police department for help . . . ." A bystander witness, another adult leader of the student group, made a statement (which was submitted by Haggerty in his response to Williams' motion for summary judgment) in which she described the situation as: "confusion," a "crowd rush[ing] to the center of the scene and every body . . . pushing and shubbing [sic]," a "wild heard [herd] of students," and "the crowd was too wild." In light of the undisputed facts—fighting, an extremely agitated person (Randolph), loud speaking, a crowd—an officer in Williams's position could reasonably have perceived the presence of "many young children and others" observing—as described by *Haggerty*—in the same way that this witness did.

8

speech *only* and that Williams's probable cause judgment may have been wrong. *Cf*. *Saucier v. Katz*, 121 S.Ct. 2151, 2159-60 (2001). We conclude that Williams is entitled to qualified immunity from Haggerty's false arrest/false imprisonment claim under section 1983.

### B.    Malicious Prosecution Under Section 1983

Subsequent to the district court's denial of Williams's summary judgment, and to when the briefs in this appeal were filed, we held that "'malicious prosecution' standing alone is no violation of the United States Constitution, and that to proceed under 42 U.S.C. § 1983 such a claim must rest upon a denial of rights secured under federal and not state law." *Castellano v. Fragozo*, 352 F.3d 939, 942 (5th Cir. 2003) (en banc). Thus, we order that Haggerty's 1983 section malicious prosecution claim be dismissed.

### C.    *Excessive Force Claim Under Section 1983*

Williams briefly argues that he is entitled to *official immunity* on a *state law* excessive force claim. However, the record does not indicate that Haggerty brought a *state law* excessive force claim, and the district court made no ruling on such a claim.[7] The district court did hold that Haggerty's *section 1983* excessive force claim could proceed; but because Williams has not argued that

---

[7] At oral argument, both parties acknowledged that Haggerty did not bring a *state law* excessive force claim, but only a § 1983 excessive force claim.

9

issue in his brief,[8] it is waived on appeal. *See United States v. Mullin*, 178 F.3d 334, 340 n.1 (5th Cir. 1999).

### III. Official Immunity and Claims Under State Law

As with the section 1983 false arrest/false imprisonment claim, the resolution of Haggerty's remaining state law claims, false imprisonment and malicious prosecution, turns on whether a reasonable officer in Williams's position could have reasonably believed he had probable cause to order the arrest of Haggerty. *See Villegas v. Griffin Industries, Indus.*, 975 S.W.2d 745, 754 (Tex. App.—Corpus Christi 1998, pet. denied) (stating that whether the imprisonment was without authority of law "depends on whether the officers had probable cause to effect an arrest"); *Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 517 (Tex. 1997) (listing "absence of probable cause for the proceeding" as an element of malicious prosecution).

"Texas law of official immunity is substantially the same as federal qualified immunity law." *Wren v. Towe*, 130 F.3d 1154, 1160 (5th Cir. 1997). We therefore reverse the denial of summary judgment based on official immunity from Haggerty's remaining state law claims for the same reasons that we reverse the denial of summary judgment on the section 1983 false arrest/false imprisonment claim.

---

[8] In his statement of the issues, Williams does not list anything with respect to an excessive force claim, under § 1983 *or* state law.

10

## Conclusion

For the reasons stated herein, we AFFIRM the denial of summary judgment with respect to the section 1983 excessive force claim and REVERSE the denial of summary judgment with respect to the section 1983 false arrest/false imprisonment and the state law false imprisonment and malicious prosecution claims.  We also order that Haggerty's section 1983 malicious prosecution claim be dismissed.

AFFIRMED in part;

REVERSED in part.

11

DeMOSS, Circuit Judge, dissenting in part:

Insofar as the majority's opinion reverses the district court's denial of qualified immunity on the § 1983 claims of false imprisonment or false arrest, I respectfully dissent. On these particular facts, a Texas statute, section 38.15 of the Penal Code, provides both the offense for which Officer Williams arrested Haggerty, TEX. PEN. CODE § 38.15(a)(1), and a defense when the interfering conduct is merely speech, id. § 38.15(d).

The majority correctly states that Haggerty must, to prevail on these claims, demonstrate that Williams lacked probable cause to arrest him under section 38.15. See Brown, 243 F.3d at 189. On this record and because of the peculiar nature of the explicit mere speech defense found in section 38.15(d), I cannot agree that Officer Williams had probable cause to arrest Haggerty. A reasonable officer in Williams's position would have been familiar with and trained in the application of section 38.15, which in its original form in 1989 included the "mere speech" defense. Act effective Sept. 1, 1989, 71st Leg., R.S., ch. 1162, § 1, 1989 Tex. Sess. Law Serv. 4780. The law, as to what constituted interference with a police officer and the existence of the speech only defense, was in place and well established at the time of Haggerty's arrest. Any reasonable police officer would know of and recognize his obligations to abide by the language of the statutory provision, including the obligation to refrain from arresting one whose objections are expressed merely by speech.

In Carney v. State, 31 S.W.3d 392, 397 (Tex. App.--Austin 2000, no pet.), the Texas court of appeals reversed a jury's conviction under section 38.15. There, although the defendant argued with the officers, delayed their entrance into his home, and lied to them, the Texas court held that the speech only defense of § 38.15(d) applied and that "a rational trier of fact could not have found, beyond reasonable doubt, the essential element of interference." Id. at 398.

In resolving that Williams is entitled to qualified immunity, the majority relies upon factors other than Haggerty's own conduct (e.g., an out-of-control victim occupying Williams's attention, a nearby group of students and teachers, some allegedly involved in an attack, and a crowd). This resolution is in tension with the treatment of section 38.15 in Carney, where the Texas court did not look to surrounding factors, but instead limited its review to whether the defendant's conduct alone included more than speech. Although Carney was decided after the incident leading to this appeal, the opinion suggests that Texas limits its analysis of the applicability of the mere speech defense to the individual's conduct alone. The only fact offered by Williams in support of the arrest in the criminal information was the allegation that Haggerty grabbed Williams. Because of this limited language, in combination with the evidence adduced by Haggerty, the primary fact question is whether Haggerty grabbed or attempted to grab Officer Williams.

13

The majority determines that this factual dispute is immaterial to the legal question of qualified immunity in this case. I disagree, based upon the record and my view that Texas's statute requires consideration of whether the mere speech defense applied. The question must be resolved in the light most favorable to Haggerty. See Price, 256 F.3d at 369. Therefore, we must assume that Haggerty never touched nor attempted to touch the officer and his only interfering conduct was speech. Based upon this view of the record and Texas's treatment of the mere speech defense in Carney, I cannot say that any reasonable officer would find probable cause to arrest Haggerty under section 38.15.

For these reasons, I would affirm the district court's denial of summary judgment on the § 1983 false arrest or false imprisonment claims and permit Haggerty to develop facts further, even if Officer Williams were ultimately entitled to qualified immunity on a more developed showing. In all other aspects of the majority's opinion, I concur.