# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 25, 2013

No. 12-50323
Summary Calendar

Lyle W. Cayce
Clerk

CARLOS SOTO,

Plaintiff-Appellant,

v.

AMADEO ORTIZ, BEXAR COUNTY SHERIFF; RICARDO GONZALEZ,

Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:11-CV-164

Before STEWART, Chief Judge, and OWEN and GRAVES, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Carlos Soto appeals the district court's grant of summary judgment in favor of Defendant-Appellees Sheriff Amadeo Ortiz and booking officer Ricardo Gonzalez with respect to his state law claims of false imprisonment and defamation, and violations of Soto's constitutional rights under 42 U.S.C. § 1983. For the following reasons, we AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-50323

## I.

On the night of January 16, 2010, an officer with the San Antonio Police Department stopped Soto for a speeding violation. During the stop, the officer discovered an outstanding warrant for a parole violation originating in Frio County, Texas for one Carlos Reyes Soto. The officer believed Plaintiff Soto to be the Carlos Reyes Soto with the outstanding warrant, but in fact they are different people.[1] After the officer verified the warrant, Soto was arrested and transported to the Bexar County Detention Center ("Detention Center") where Soto's identity was confirmed by the Texas Department of Public Safety Information System and the Automated Fingerprint Information System. The Texas Department of Criminal Justice Parole Division-Austin ("TDCJ-Austin") confirmed that the warrant was active, and the Texas Department of Public Safety Information System matched the Social Security number and date of birth in the warrant with Soto's. Soto allegedly informed both the arresting and booking officers that this was a case of mistaken identity.

On January 17, 2010, Soto's wife contacted the Detention Center claiming that Soto could not have violated parole since he had never been imprisoned. After Soto's identity was called into question, Sergeant Jerri Harrison of the Bexar County Sheriff Office ("Harrison") requested and received from Frio County a faxed copy of Reyes's fingerprints and photographs, but the fax was of such poor quality that Harrison was unable to conclusively match Soto to Reyes. Harrison suspected, however, that Soto's and Reyes's fingerprints and photographs probably were not a positive match. In continuing her investigation, Harrison contacted TDCJ-Austin, which informed her that it was unable to provide Reyes's fingerprints until after the Martin Luther King, Jr.,

---

[1] For purposes of this opinion, we refer to Carlos Soto as "Soto" and Carlos Reyes Soto as "Reyes."

No. 12-50323

holiday. Accordingly, Soto remained in the Detention Center over the holiday weekend.

On January 19, 2010, Sergeant Alejandro Sanchez continued the investigation and obtained several faxes from TDCJ-Austin and Frio County. Ultimately, Sanchez's investigation revealed that Soto was previously arrested and booked in Frio County. In August 2006, Frio County mistakenly sent Soto's identifiers to TDCJ-Austin as Reyes's identifiers. TDCJ-Austin then used Soto's identification information in issuing a warrant for Reyes. Although Sanchez discovered the error on January 19, 2010, Soto remained in the Detention Center until TDCJ-Austin confirmed his identity on January 20, 2010. In total, Soto was detained for four days.

Soto filed suit in Texas state court, alleging false imprisonment, defamation, and violations of his constitutional rights under 42 U.S.C. § 1983 against booking officer Ricardo Gonzalez[2] in his individual capacity and Bexar County Sheriff Amadeo Ortiz Sheriff Ortiz in his individual and official capacity under a respondeat superior theory of liability (collectively "Defendants").[3] Defendants removed the case to federal court and moved for summary judgment, claiming immunity from Soto's false imprisonment and defamation claims under the Texas Tort Claims Act, and qualified immunity with respect to Soto's claims under 42 U.S.C. § 1983. In response, Soto further alleged that the Sheriff breached the non-delegable duty to commit all prisoners by lawful authority pursuant to Tex. Loc. Gov't Code § 351.041. The district court granted summary

---

[2] Ricardo Gonzalez did not book Soto, and his only role was to confirm that the information on Reyes's warrant matched the information of the person arrested.

[3] On appeal, Soto does not raise his false imprisonment and defamation claims. Accordingly, these arguments are waived. *See Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 n.1 (5th Cir. 2004) (noting waiver of argument where appellant failed to brief the issue).

3

judgment in favor of Defendants pursuant to the Texas Tort Claims Act and qualified immunity. Soto now appeals.

## II.

We review the district court's grant of summary judgment de novo. *Admiral Ins. Co. v. Ford*, 607 F.3d 420, 422 (5th Cir. 2010) (citation omitted). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We must view all facts and evidence in the light most favorable to the non-moving party when considering a motion for summary judgment. *Dameware Dev.*, *L.L.C. v. Am. Gen. Life Ins. Co.*, 688 F.3d 203, 206-07 (5th Cir. 2012) (citation omitted).

## III.

### A.

Soto makes three arguments on appeal. First, Soto contends that Defendants did not sufficiently plead the defense of qualified immunity in its answer. Second, Soto claims that Defendants' conduct in wrongfully detaining him amounted to a violation of due process under the Fourteenth Amendment. Finally, Soto claims that Defendants violated Tex. Loc. Gov't Code § 351.041 because Defendants did not have lawful authority to hold him in custody. For the reasons explained more fully below, Soto's arguments are without merit.

### B.

As to Soto's first contention on appeal, Soto argues that Defendants did not sufficiently plead the defense of qualified immunity in its answer as required by Fed. R. Civ. P. 8(c). Soto alleges that Defendants did not plead that their actions in holding Soto in custody were supported by good faith and were within their scope of discretionary authority.

Qualified immunity is an affirmative defense. *Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572, 577 (5th Cir. 2009). As such, the defendant has the

burden to plead and prove qualified immunity. *Id.* (citing *Gomez v. Toledo*, 446 U.S. 635, 640, (1980)) (other citation omitted). Generally, Fed. R. Civ. P. 8(c) requires the defendant to raise an affirmative defense in its first responsive pleading. *Pasco*, 566 F.3d at 577. Nonetheless,"[w]here the matter is raised in the trial court in a manner that does not result in unfair surprise . . . technical failure to comply precisely with Rule 8(c) is not fatal." *Id.* (quoting *Allied Chem. Corp. v. Mackay*, 695 F.2d 854, 855-56 (5th Cir. 1983)) (alteration in original). Rather, this court examines the overall context of the litigation and has found no waiver where there is no evidence of prejudice and the plaintiff has sufficient time to respond to the defense before trial. *Id.* (citing *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 492 (5th Cir. 2001)).

In their answer, the Defendants stated, "Defendants are immune from the claims asserted." Defendants' answer provided notice to Soto that Defendants were seeking immunity in defending against Soto's claims, and Soto has not asserted he was prejudiced in any way. We therefore conclude that Soto's waiver argument fails.

C.

Soto next argues that the district court erred in ruling that Defendants were entitled to qualified immunity with respect to his 42 U.S.C. § 1983 claim because his wrongful detention constituted a violation of due process under the Fourteenth Amendment.

A qualified immunity defense alters the summary judgment burden of proof. *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005) (citation omitted). Once the defendant pleads qualified immunity, the burden then shifts to the plaintiff, who "must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Gates*

*v. Tex. Dep't of Protective and Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008) (citation omitted).

In reviewing a claim of qualified immunity, we employ a two-prong test: (1) whether an official's conduct violated a constitutional right of the plaintiff; and (2) whether the right was clearly established at the time of the violation. *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009) (citation omitted). If the defendant's actions violated a clearly established constitutional right, the court then asks whether qualified immunity is still appropriate because the defendant's actions were "objectively reasonable" in light of "law which was clearly established at the time of the disputed action." *Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004) (citation omitted). Whether an official's conduct was objectively reasonable is a question of law for the court. *Brown v. Callahan,* 623 F.3d 249, 253 (5th Cir. 2010). "To be clearly established for purposes of qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008) (citation omitted).

We conclude that the district court did not err in granting summary judgment to Defendants with respect to qualified immunity, as there is no due process violation in this case.

In *Baker v. McCollan*, the Supreme Court addressed the issue presented in this case–whether a plaintiff's erroneous detention constituted a violation of his due process rights in a § 1983 action. 443 U.S. 137 (1979). In *Baker*, the plaintiff was stopped for a routine traffic violation and subsequently arrested pursuant to a facially valid warrant. *Id.* at 143. It was later discovered that the plaintiff was wrongfully detained and that the warrant was intended for plaintiff's brother. *Id.* Prior to the plaintiff's arrest, the plaintiff's brother obtained a duplicate of his brother's driver's license and represented himself as

the plaintiff during a prior booking. *Id.* As a result, the plaintiff was wrongfully detained for three days. *Id.*

The Supreme Court held that the plaintiff's wrongful detention pursuant to a facially valid warrant did not amount to a deprivation of his constitutional rights for purposes of his § 1983 claim. *Id.* at 143-44. Central to the Court's holding was that the Fourteenth Amendment does not protect against all deprivations of liberty but only against deprivations of liberty "without due process of law." *Id.* at 145. The Court reasoned,

> Given the requirements that arrest be made only on probable cause and that one detained be accorded a speedy trial, we do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent. Nor is the official charged with maintaining custody of the accused named in the warrant required by the Constitution to perform an error-free investigation of such a claim.

*Id.* at 145-46.

Nevertheless, the Court cautioned that a wrongful detention pursuant to a valid warrant in the face of repeated protestations of innocence over a duration of time could amount to a violation of due process. *Id.* at 145. The facts of *Baker*, however, did not implicate this concern. *Id.* In *Daniels v. Williams*, the Court held that the "Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." 474 U.S. 327, 328 (1986).

This court has similarly held that an erroneous detention does not amount to a due process violation in a § 1983 action where defendants' actions do not exceed mere negligence. *Compare Simmons v. McElveen*, 846 F.2d 337, 338-39 (5th Cir. 1988) (holding police officer's conduct did not exceed mere negligence

where plaintiff spent eight months in jail after being identified as an assailant in an armed robbery, although his fingerprints did not match those of the true assailant), *and Sanchez v. Swyden*, 139 F.3d 464, 468-69 (5th Cir. 1998) (holding an erroneous detention that lasted for 26 hours did not amount to a due process violation where Sanchez was held pursuant to a facially valid warrant, and Sanchez's allegations that officers were in possession of information that exculpated him did not amount to more than mere negligence), *with Sanders v. English*, 950 F.2d 1152, 1154, 1161-62 (5th Cir. 1992) (holding that an arresting officer was not entitled to qualified immunity on summary judgment where the office knowingly and willfully ignored substantial exculpatory evidence and the defendant remained incarcerated for 50 days).

Here, Soto has failed to rebut the Defendants' qualified immunity defense because he has not shown a genuine dispute as to any material fact regarding a violation of his constitutional right. Similar to *Baker*, Soto was arrested and detained pursuant to a facially valid warrant. *See Baker*, 443 U.S. at 143. The Texas Department of Public Safety Information System and the Automated Fingerprint Information System returned a positive match of Soto's identifiers with the warrant, which provided a good faith basis for the officers' belief that Soto was in fact Reyes.[4]

When Soto's wife contacted the Detention Center, Harrison immediately began an investigation into Soto's identity and ran Soto's Texas Department of Public Safety identification number through a database. The database noted that Soto's date of birth and Social Security number matched the information contained in the warrant. Despite this confirmation, Harrison continued her

---

[4] The Detention Center used other databases in investigating Soto's identity, which included the National Crime Information Center and the Criminal Justice Information System.

investigation by requesting fingerprints and photographs of Reyes from Frio County and TDCJ-Austin. After she received a fax from Frio County, Harrison believed that Soto and Reyes were not the same person. Harrison, however, could not make a positive confirmation of Soto's identity because of the poor quality of the fax and the failure to obtain fingerprints and photographs from TDCJ-Austin due to its closure over the holiday weekend. On January 19, 2010, Sanchez resumed the investigation and ultimately concluded that Soto was not Reyes. Soto was released on January 20, 2010 after his identity was confirmed by TDCJ-Austin.

Although Soto was wrongfully detained, *Baker* teaches us that the Fourteenth Amendment does not protect against all deprivations of liberty and that the Constitution does not require that the Detention Center conduct an error-free investigation of Soto's claim. 443 U.S. at 145-46. The Detention Center actively investigated to ascertain Soto's identity through various databases and law enforcement agencies, and while we do not express an opinion on whether there was any negligence on the part of the Detention Center, it is clear that the Detention Center's actions do not exceed mere negligence. Therefore, we conclude Soto has failed to satisfy the first prong of our qualified immunity inquiry–whether an official's conduct violated a constitutional right of the plaintiff. *See Sanchez*, 139 F.3d at 469 (citation omitted) ("[W]e have required proof that the official's actions went beyond mere negligence before [the] tort [of false imprisonment] takes on constitutional dimensions."). Accordingly, Soto's § 1983 claim fails.

D.

Soto finally contends that Tex. Loc. Gov't Code § 351.041(a), which requires the sheriff to commit prisoners by lawful authority, is an independent ground for recovery separate and apart from Soto's false imprisonment claim. Soto also alleges that Defendants failed to address Tex. Loc. Gov't Code §

351.041(a) in their motion for summary judgment, and as a result, the district court erred in granting summary judgment in favor of Defendants.[5]

Tex. Loc. Gov't Code § 351.041 (a) provides, "[t]he sheriff of each county is the keeper of the county jail. The sheriff shall safely keep all prisoners committed to the jail by a lawful authority, subject to an order of the proper court." In *Whirl v. Kern*, we noted that the duty imposed by the predecessor provision of Tex. Loc. Gov't Code § 351.041(a) is a duty to investigate.[6] 407 F.2d 781, 795-96 (5th Cir. 1969). In *Douthit v. Jones*, we further clarified that duty by stating,

> Construing *Whirl* and [a later case] together, we conclude that art. 5116 imposes a duty upon county sheriffs in Texas to incarcerate only those persons whom he has lawful authority to imprison. A sheriff may satisfy this duty by adopting reasonable internal procedures to ensure that only those persons are incarcerated for whom the sheriff, or the deputy to whom he delegates such responsibilities, has a good faith belief based upon objective circumstances that he possesses valid legal authority to imprison.

641 F.2d 345, 346-47 (5th Cir. 1981), *reh'g opinion of* 619 F.2d 527 (5th Cir. 1980).

Even assuming *arguendo* that Tex. Loc. Gov't Code § 351.041(a) provides an independent ground for recovery, we conclude that Soto's claim is without merit. The Detention Center's investigation revealed "objective circumstances" justifying a good faith belief that the sheriff possessed valid legal authority to hold Soto in custody pursuant to a facially valid warrant and the confirmation results of various databases. As the foregoing discussion illustrates, the

---

[5] Contrary to Soto's argument, Defendants specifically reference Tex. Loc. Gov't Code § 351.041 in their motion for summary judgment.

[6] Tex. Loc. Gov't Code § 351.041 was formerly codified as Tex. Rev. Civ. Stat. art. 5116.

No. 12-50323

Detention Center had in place and employed reasonable internal procedures in ascertaining Soto's identity. *See supra* Part III. C. We thus conclude that Soto's argument is without merit.

## IV.

For these reasons, we AFFIRM the district court's grant of summary judgment.