**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 12, 2010

Charles R. Fulbruge III
Clerk

No. 08-10794

DANIEL F RHODES,

Plaintiff–Appellant

v.

TIBOR PRINCE; WILLIAM HARRIS; JAMES F ROACH, III; GARY KROHN; JERRY D CARROLL,

Defendants–Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 3:05-cv-2343

Before HIGGINBOTHAM, GARZA, and PRADO, Circuit Judges.

PER CURIAM:[*]

Plaintiff–Appellant Daniel F. Rhodes sued Defendants–Appellees Tibor Prince, William Harris, James F. Roach, III, Gary Krohn, and Jerry D. Carroll (collectively, "Defendants") under 42 U.S.C. § 1983, alleging that Defendants violated his Fourth Amendment right to be free from false arrest. The district court dismissed the action after finding that Rhodes failed to allege an arrest

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 08-10794

under the Fourth Amendment and Defendants were entitled to qualified immunity. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This is the second time these parties have appeared before this Court. *See Rhodes v. Prince* (*Rhodes II*), 273 F. App'x 328, 329–30 (5th Cir. 2008) (per curiam) (unpublished). Because of the fact-dependent nature of the issue before us, we provide Rhodes's allegations in detail.

Rhodes works as a civilian crime scene investigator for the Investigative Services Bureau of the Arlington Police Department (the "Department"). In the fall of 2003, Rhodes raised concerns about the standards, procedures, and personnel in the Department. After his complaints were made public, he alleges that members of the Crime Scene Unit conspired to frame him by obtaining his fingerprints from a training exercise and placing them at the scene of a burglary.

On December 4, 2003, Defendants Krohn, Carroll, and Roach informed Rhodes that he was a suspect in the burglary and that Defendant Roach would conduct the criminal investigation. Rhodes invoked his Fifth Amendment right to remain silent. The next day, the Department notified Rhodes that it had commenced an internal affairs investigation. The Department placed Rhodes on administrative leave, and internal affairs investigators conducted an interview with him.

Rhodes alleges that on December 9, 2003, he appeared at the Eastside Police station for questioning. While there, he was fingerprinted and palm printed, and Defendant Roach questioned him for two hours. Rhodes did not allege that he appeared at the station involuntarily or that Roach made any show of force to restrain him.

The Department eventually cleared Rhodes of all wrongdoing, and he brought a § 1983 action against Defendants, asserting claims under the First and Fourth Amendments. Defendants moved to dismiss his suit based on

2

qualified immunity and the district court ordered Rhodes to submit a reply under Federal Rule of Civil Procedure 7(a).  After Rhodes complied, the district court dismissed his Fourth Amendment false arrest claim under Federal Rule of Civil Procedure 12(b)(6), holding that Rhodes failed to plead facts sufficient to demonstrate that he was seized in violation of the Fourth Amendment. *Rhodes v. Prince* (*Rhodes I*), No. 3:05-CV-2343, 2007 WL 431049, at *8 (N.D. Tex. Feb. 8, 2007).

The district court denied qualified immunity, however, on Rhodes's First Amendment retaliation claim.  *Id.* at *7.  Defendants filed an interlocutory appeal with respect to the First Amendment claim only.  On appeal, we held that Defendants were entitled to qualified immunity on the First Amendment retaliation claim, but remanded on Rhodes's Fourth Amendment claim. *Rhodes II*, 273 F. App'x at 329–30.

On remand, the district court dismissed Rhodes's entire suit, declining "to alter its conclusion that the individual defendants are entitled to qualified immunity because Rhodes has failed to plead a Fourth Amendment false arrest claim." *Rhodes v. Prince* (*Rhodes III*), No. 3:05-CV-2343, 2008 WL 2416256, at *4 (N.D. Tex. June 11, 2008).  The district court held that "Rhodes had failed to plead an actual 'seizure' (i.e., an 'arrest') within the meaning of the Fourth Amendment."  *Id.* at *3.  It found especially relevant that Rhodes's employer questioned him, and distinguished "'between a police department's actions in its capacity as an employer and its actions as the law enforcement arm of the state.'"  *Id.* (quoting *Driebel v. City of Milwaukee*, 298 F.3d 622, 637 (7th Cir. 2002)).  Accordingly, the district court dismissed Rhodes's claim and certified its dismissal as a final judgment under Federal Rule of Civil Procedure 54(b). Rhodes appealed.

## II.  JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction under 28 U.S.C. § 1291 and review the district court's

dismissal under Rule 12(b)(6) *de novo*. *Abraham v. Singh*, 480 F.3d 351, 354 (5th Cir. 2007). Where, as here, a defendant asserts the affirmative defense of qualified immunity and the district court requires the plaintiff to submit a particularized reply under Rule 7(a), we examine both the complaint and the Rule 7(a) reply. *See Todd v. Hawk*, 72 F.3d 443, 446 (5th Cir. 1995) (per curiam).

When reviewing a motion to dismiss, we must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Gonzales v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)) (internal quotation marks omitted). The Supreme Court in *Iqbal* explained that *Twombly* promulgated a "two-pronged approach" to determine whether a complaint states a plausible claim for relief. *Iqbal*, 129 S. Ct. at 1950. First, we must identify those pleadings that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* Legal conclusions "must be supported by factual allegations." *Id.*

Upon identifying the well-pleaded factual allegations, we then "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

No. 08-10794

## III. ANALYSIS

### A.    Qualified Immunity

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  When faced with a question of qualified immunity, we conduct the two-step analysis of *Saucier v. Katz*, 533 U.S. 194, 199–200 (2001), *overruled in part by Pearson v. Callahan*, 129 S. Ct. 808 (2009).

Although *Saucier*'s two-step analysis is not an inflexible progression, *see Pearson*, 129 S. Ct. at 815–22, here we first ask whether, taking the facts in the light most favorable to Rhodes, the officer's alleged conduct violated Rhodes's right to be free from false arrest. *Saucier*, 533 U.S. at 201.  If we determine that no constitutional violation occurred, our inquiry ends.  *Id.*  If, however, the alleged conduct amounts to a constitutional violation, we then ask whether the right was clearly established at the time of the conduct.  *Id.*  If we answer both questions affirmatively, qualified immunity does not shield the officer.  *See, e.g.*, *Lytle v. Bexar County*, 560 F.3d 404, 417–18 (5th Cir. 2009).  Because we find that Rhodes has not sufficiently alleged an arrest, we do not reach the second question.

### B.    False Arrest

To prevail on his Fourth Amendment false arrest claim, Rhodes must sufficiently allege (1) that he was arrested, and (2) the arrest did not have the requisite probable cause.  *See Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655–56 (5th Cir. 2004).  The Supreme Court has made clear that not every interaction between police and citizens constitutes a "seizure" as contemplated by the Fourth Amendment.  In *United States v. Mendenhall*, Justice Stewart explained that "a person has been 'seized' within the meaning of the Fourth Amendment only if, in

5

view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." 446 U.S. 544, 554 (1980). This "free to leave" standard has become the "touchstone" of Fourth Amendment seizure jurisprudence. *See Brendlin v. California*, 551 U.S. 249, 255 (2007) (citing *California v. Hodari D.*, 499 U.S. 621, 627 (1991); *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988); *INS v. Delgado*, 466 U.S. 210, 215 (1984)).

Defendants argue that, due to Rhodes's unique employer-employee relationship with the police department, he could not have been "seized" absent a formal arrest. This is incorrect. Rhodes's employment does not abrogate his protections under the Fourth Amendment, *Garrity v. New Jersey*, 385 U.S. 493, 500 (1967), and the Government need not formally arrest Rhodes for a Fourth Amendment seizure to occur. *See Dunaway v. New York*, 442 U.S. 200, 212 (1979). Despite this protection, "nothing in the Fourth Amendment endows public employees with greater workplace rights than those enjoyed by their counterparts in the private sector." *Driebel,* 298 F.3d at 637; *see also Reyes v. Maschmeier*, 446 F.3d 1199, 1204 (11th Cir. 2006) (holding that an officer was not "seized" because a reasonable person would have felt free to leave).

Although the Supreme Court has not yet addressed the Fourth Amendment implications of an alleged seizure of a public employee, our inquiry remains whether a reasonable person in Rhodes's position believed he was free to leave. To answer this question, we examine the totality of the circumstances surrounding the alleged seizure, *Mendenhall*, 551 U.S. at 554, including whether Rhodes's freedom of movement was limited by the "obligations that arise from the employment relationship" or whether his movement was restricted due to the "exercise of governmental authority akin to an arrest." *Reyes*, 446 F.3d at 1204–05. We also consider several other factors, such as "the nature of the encounter, its setting, and its preparation." *Driebel*, 298 F.3d at 640 n.9 (citing *Cerrone v. Brown*, 246 F.3d 194, 201 (2d Cir. 2001)).

6

No. 08-10794

Our inquiry "is an objective one, asking whether a reasonable person in the position of [Rhodes] would believe he was the subject of a criminal or an administrative investigation by the department." *Id.* The question is fact-intensive. *See, e.g., id.* at 642–46 (distinguishing between mere questioning of police officers by the department, without facts indicative of arrest, and later formal arrest, with all its typical emblems).

Rhodes points us to the events of December 9, 2003 to establish a Fourth Amendment violation. We must first, however, identify the allegations in his complaint that are entitled to a presumption of truth. *Iqbal*, 129 S. Ct. at 1951. Rhodes alleges that Defendant Roach "intentionally and falsely arrested" him, "when he knew such conduct was a violation of [his] Fourth Amendment right to be free from unlawful search and seizures," and that Defendant Roach did so with the support of the other Defendants. Because an "arrest" is a legal conclusion under the Fourth Amendment and a necessary element of a false arrest claim, *see Haggerty*, 391 F.3d at 655–56 (citations omitted), Rhodes's allegation of "arrest" is "nothing more than a 'formulaic recitation of the elements' of a constitutional . . . claim . . . . and [is] not entitled to be assumed true." *Iqbal*, 129 S. Ct. at 1951 (quoting *Twombly*, 550 U.S. at 555).

Rhodes describes Defendant Roach's questioning as an "interrogation." "Interrogation" is a word with mixed connotations in the law, typically used to describe the questioning of a person while in custody. *See* BLACK'S LAW DICTIONARY 838 (8th ed. 2004) (defining "interrogation" as "[t]he formal or systematic questioning of a person; esp[ecially], intensive questioning by the police, usu[ally] of a person arrested for or suspected of committing a crime"). Rhodes's use of "interrogation" to describe the questioning by Defendant Roach does not necessarily equate to an arrest because, absent facts indicative of a Fourth Amendment seizure, Rhodes's description amounts to little more than a matter of word choice, without additional legal weight. *Cf. Iqbal*, 129 S. Ct. at

7

1951.

Some of the alleged facts in Rhodes's Rule 7(a) reply are, however, entitled to a presumption of truth. Rhodes alleges that on December 4, 2003, Defendants Krohn, Carroll, and Roach notified him that he was a suspect in the burglary, and that he asserted his Fifth Amendment right to remain silent. Defendant Roach advised Rhodes that he would head a criminal investigation into the matter. The Department then informed Rhodes that he was subject to an internal affairs investigation, placed him on administrative leave and conducted an interview on the matter. Rhodes further alleges that he was fingerprinted and palm printed "without consent" before Defendant Roach questioned him. Rhodes alleges that the questioning lasted approximately two hours. Although it is not clear from the Rule 7(a) reply, Rhodes's counsel appears to have been present during the questioning.

Viewing the pleadings in the light most favorable to Rhodes, we find that he has not sufficiently pled that he was "seized" under the Fourth Amendment. The district court required Rhodes to come forward with sufficient factual allegations in his Rule 7(a) reply to overcome the Defendants' claim to qualified immunity. *See Schultea v. Wood*, 47 F.3d 1427, 1433–34 (5th Cir. 1995) (en banc). Rhodes thus had the burden to demonstrate that an objective person would not have felt free to leave the exchange with Defendant Roach. *See id.* at 1434. Rhodes has not carried his burden.

Significantly, Rhodes never alleged that he appeared at the Eastside Police Station involuntarily or felt that he was being detained. Rhodes also does not allege any show of force by the police. The taking of fingerprints and palm prints traditionally accompany an arrest, but standing alone, they do not suffice to establish an arrest. Rhodes was aware of both the criminal and administrative investigations and, in his Rule 7(a) reply, Rhodes had the burden to distinguish between his compliance with workplace obligations and a show of police force

No. 08-10794

sufficient to demonstrate a Fourth Amendment arrest. *See Driebel*, 298 F.3d at 642–46. Rhodes failed to do so. Even viewing the pleadings in the light most favorable to Rhodes, we find that a reasonable person would have felt free to leave the encounter. Thus, Rhodes has not sufficiently alleged that he was "seized" under the Fourth Amendment.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's dismissal of Rhodes's Fourth Amendment claim.

AFFIRMED.