[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-15535

_____

D.C. Docket No. 3:10-cv-00695-HES-PDB

JOANN COOPER,
individually and as next friend of D.C.,

Plaintiff - Appellant,

CARL COOPER,
as a parent and natural guardian of A.C., a minor,

Consolidated Plaintiff,

versus

JOHN RUTHERFORD,
in his official capacity as Sheriff of the Consolidated
City of Jacksonville and Duval County, Florida,
RYAN BLACK,
individually,
DARRIES GRIFFITH,
individually,
JESSIE YORK,
individually,
JASON LEDERMAN,
individually, et al.,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(September 29, 2020)

Before JORDAN, TJOFLAT, and HULL, Circuit Judges.

PER CURIAM:

Joann Cooper and her children were in their car in the drive-through lane of a Wendy's restaurant in Jacksonville when a bank robbery suspect, with gun in hand, forced his way into the car. During an ensuing shootout, Jacksonville police officers fired dozens of shots at the car, and Ms. Cooper and her son were both seriously injured by the gunfire. *See Cooper v. Rutherford*, 503 F. App'x 672, 673 (11th Cir. 2012).

Ms. Cooper, on behalf of herself and her son, sued the Jacksonville Sheriff in his official capacity, and several Jacksonville officers in their individual capacities. She asserted claims for Fourth Amendment and Fourteenth Amendment violations under 42 U.S.C. § 1983, and state-law claims for negligence and battery.

The district court granted qualified immunity in favor of the individual officers, with the exception of Officer Black, who had fired 24 shots. When the case first came before us on interlocutory appeal, we ruled that Officer Black was entitled to qualified immunity on the § 1983 claims. Assuming that Officer Black violated

2

the constitutional rights of Ms. Cooper and her son, we ruled that (a) pre-existing law did not "clearly establish that [Ms. Cooper and her son] were seized when Officer Black's bullet accidentally struck them during the confrontation with the armed bank robber;" (b) the case was not one in which the general Fourth Amendment rule prohibiting excessive force applied with obvious clarity; and (c) there was no case law clearly establishing that Officer Black violated the Fourteenth Amendment's substantive due process guarantee. *See Cooper*, 503 F. App'x at 675-77.

When the case returned to the district court, the Sheriff moved for summary judgment on the official capacity claims. The district court granted the Sheriff's motion for summary judgment. *See* D.E. 122. On the Fourth Amendment claim, the district court concluded that Ms. Cooper and her son could not show that they were subject to an unreasonable seizure when they were hit by police gunfire. *See id.* at 10–12. On the substantive Fourteenth Amendment claim, the district court concluded that Ms. Cooper and her son could not show that the Sheriff or the officers intended to cause them harm. *See id.* at 13–14. On the state-law claims, the district court concluded that sovereign immunity applied because challenged actions were discretionary. *See id.* at 14–16.

On appeal, Ms. Cooper and her son challenge all of these rulings in favor of the Sheriff. Following oral argument, and a review of the record, we affirm.

Because we write for the parties, we assume their familiarity with the record, and set out only what is necessary to explain our decision.

## II

We review a district court's summary judgment order *de novo*. *See Troupe v. Sarasota Cty., Fla.*, 419 F.3d 1160, 1165 (11th Cir. 2005). In exercising this plenary review, "[w]e use the same legal standards as the district court and draw evidentiary inferences in favor of the nonmoving party." *Reyes v. Maschmeier*, 446 F.3d 1199, 1202 (11th Cir. 2006) (citation omitted).

## III

The § 1983 official capacity claims against the Sheriff—the Fourth Amendment claim and the Fourteenth Amendment substantive due process claim— are claims against the sovereign, i.e., the government entity. *See Lewis v. Clarke*, 137 S. Ct. 1285, 1291 (2017); *Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Brown v. Neumann*, 188 F.3d 1289, 1290 (11th Cir. 1999). A municipality cannot be "vicariously liable under § 1983 for [its] employees' actions." *Connick v. Thompson*, 563 U.S. 51, 60 (2011). Instead, "[a] municipality or other local government may be liable under [§ 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Id.* (citing *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978)). Specifically, a plaintiff "must ultimately prove that the [municipality] had

4

a policy, custom, or practice that caused the deprivation." *Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016). Liability will not attach "unless a municipal 'policy' or 'custom' is the moving force behind the constitutional violation." *City of Canton v. Harris*, 489 U.S. 378, 379 (1989).

The district court, given its merits rulings, did not address whether there was a municipal policy, custom, or practice that caused the alleged constitutional violations. *See* D.E. 122 at 14. But on appeal the Sheriff again argues, as an alternative ground for affirmance, that there was no showing of any such policy, custom, or practice. *See* Br. for Appellee at 27–35. Ms. Cooper contends that there are material issues of fact on this issue. *See* Br. for Appellants at 29–34. As explained below, we agree with the Sheriff. Assuming that the officers violated the Fourth and Fourteenth Amendment rights of Ms. Cooper and her son by firing their weapons and striking them with some of their shots, the record does not create a jury question on municipal liability.

## A

Ms. Cooper is proceeding on a failure to train theory. She argues that the Jacksonville Sheriff's Office was deliberately indifferent to the lives of its citizens by not training its officers on the proper protocol for discharging firearms when innocent bystanders are present. She asserts that the need to train officers on the use of deadly force in hostage situations is so obvious, and the potential for killing or

5

injuring an innocent civilian is so high, that the Sheriff was deliberately indifferent to her constitutional rights and those of her son.

"[T]he inadequacy of police training may serve as the basis for § 1983 [municipal] liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. . . . Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Harris*, 489 U.S. at 388–89.

"'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Connick*, 563 U.S. at 61 (citations and internal quotation marks omitted). *See also Pembaur v. City of Cincinnati,* 475 U.S. 469, 483 (1986) ("[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.").

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61. Nevertheless, there may be "rare" failure to train cases in which "the unconstitutional consequences of failing to train [are] so patently obvious" that a municipality may be liable under § 1983 "without proof of a pre-existing pattern of violations." *Id.* at 64. The Supreme Court has theorized that one such scenario may be a failure to train officers who are armed on how to deal with fleeing felons, given the frequency of that particular occurrence. *See id.* at 63–64.

### B

For a number of reasons, we conclude that the Sheriff is entitled to summary judgment on the § 1983 municipal liability claims of Ms. Cooper and her son.

First, "[t]o establish a 'deliberate or conscious choice' or . . . 'deliberate indifference,' a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). Because "decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights" unless they have "notice that a course of training is deficient in a particular respect," a "pattern of similar constitutional violations is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563

7

U.S. at 62.

Ms. Cooper has not presented any evidence of prior similar incidents where bystanders or hostages were injured due to officers exchanging gunfire with a suspect. Because there was "no evidence of a history of widespread prior abuse . . . [that] put the [S]heriff on notice of the need for improved training or supervision," *Wright v. Sheppard*, 919 F.2d 665, 674 (11th Cir. 1990), there is no jury question on the matter of deliberate indifference.

Second, this is not the "rare" failure to train scenario where the likelihood for constitutional violations is so high that the need for training would be obvious. As Ms. Cooper acknowledges, the Jacksonville Sheriff's Office had a policy generally providing that officers should not discharge their weapons into moving vehicles except as a last resort (i.e., when all other opportunities have been exhausted, to prevent death or great bodily harm to the officer or other persons, or to prevent the escape of a fleeing felon who would pose an imminent threat of death or great bodily harm). That same policy instructed officers to "exercise reasonable caution in order to avoid unnecessarily endangering the lives of bystanders. When possible, officers should give consideration to the backdrop, bystanders, and location." *See* D.E. 115-1 at 48–49.

We recognize that this general admonition did not specifically address the discharge of weapons in a hostage situation involving a non-moving vehicle. But

8

given the general instruction that officers should use reasonable caution to avoid unnecessary danger to others when deciding whether to discharge their weapons, Ms. Cooper and her son cannot create a jury question on deliberate indifference. We note that Officers Black and Griffith were administratively found to have violated the "response to resistance" and "deadly force" policies of the Jacksonville Sheriff's Office, and resigned in lieu of termination. So this was not a case of a municipality turning a blind eye to a first-time violation of its policies. Although we do not necessarily agree with the Sheriff that his policies "exceed" constitutional standards, *see* Br. for Appellee at 31 n.17, we do conclude that they do not demonstrate deliberate indifference. *Cf. Ross v. Town of Austin*, 343 F.3d 915, 918 (7th Cir. 2003) ("§ 1983 imposes on municipalities no constitutional duty to provide law enforcement officers with advanced, specialized training [e.g., hostage negotiation and tactical combat training] based upon a general history of criminal activity [e.g., armed robberies] in the community").

## IV

Florida law generally prohibits the state or a municipality from being "held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function." Fla. Stat. § 768.28(9)(a). The Florida Supreme Court has ruled that § 768.28(9)(a) provides immunity from suit, rather

9

than simply from liability. *See Keck v. Eminisor*, 104 So. 3d 359, 366 (Fla. 2012).

Florida, however, has waived its sovereign immunity (and that of its municipalities and subdivisions) "under circumstances in which the state or agency or subdivision, if a private person, would be liable to the claimant, in accordance with the general laws of [the] state." *See* Fla. Stat. § 768.28(1). Even if a complaint contains adequate allegations showing that a private person would be liable in tort, the sovereign immunity waiver does not apply if the challenged act was "discretionary" rather than "operational." *See Lewis v. City of St. Petersburg,* 260 F.3d 1260, 1262 (11th Cir. 2001).

Under Florida law, an "operational" act is "one not necessary to or inherent in policy or planning, that merely reflects a secondary decision as to how those policies or plans will be implemented," while discretionary acts involve "an exercise of executive . . . power such that, for the court to intervene by way of tort law, it inappropriately would entangle itself in fundamental questions of policy and planning." *Kaisner v. Kolb*, 543 So. 2d 732, 737 (Fla. 1989). Indeed, the Florida Supreme Court has explained that the state and its subdivisions have "discretionary power to enforce compliance with the law, as well as the authority to protect public safety." *Trianon Park Condo. Ass'n, Inc. v. City of Hialeah*, 468 So. 2d 912, 919 (Fla. 1985).

Ms. Cooper argues that the district court erred in concluding that the so-called

police-emergency exception entitled the Sheriff to sovereign immunity. She contends that, given the facts here, the actions of the responding officers were operational and not discretionary. Because the officers' actions should have been viewed as operational, she continues, the district court erred in applying sovereign immunity.

As a general matter, the Florida Supreme Court has stated that "[t]he decision of whether to enforce the law by making an arrest is a basic judgmental or discretionary governmental function that is immune from suit." *Everton v. Willard*, 468 So.2d 936, 937 (Fla. 1985). Moreover, it has also said that in emergency circumstances sovereign immunity applies to acts of decision-making that would normally be considered "operational" but become "discretionary." *See Kaisner*, 543 So. 2d at 738 n.3 ("The way in which government agents respond to a serious emergency is entitled to great deference, and may in fact reach a level of such urgency as to be considered discretionary and not operational.") (dicta). To fall within the so-called police-emergency exception,

> the serious emergency must be one thrust upon the police by lawbreakers or other external forces, that requires them to choose between different risks posed to the public. In other words, no matter what decision police officers make, someone or some group will be put at risk; and officers thus are left no option but to choose between two different evils. It is this choice between risks that is entitled to the protection of sovereign immunity in appropriate cases, because it involves what essentially is a discretionary act of executive decision-making.

*City of Pinellas Park v. Brown*, 604 So. 2d 1222, 1227 (Fla. 1992) (dicta) (footnote omitted).  *See also Rodriguez v. Miami-Dade Cty.*, 117 So. 3d 400, 408 (Fla. 2013) (explaining the narrow nature of the exception, and noting that the Florida Supreme Court has never applied it to provide immunity).

Here, the officers responded to the fleeing armed suspect out of necessity and took swift action to prevent harm.  Given the choices available to them—allowing an armed suspect to escape with multiple hostages and potentially starting a police chase or keeping an armed suspect with hostages (who might in any event be harmed) in a car in a restaurant drive-through—we conclude that the police emergency exception applies.  Under Florida law, "the actual execution of a hot-pursuit policy is entitled to a high degree of judicial deference consistent with reason and public safety."  *Pinellas Park*, 604 So.2d at 1226 (dicta).  *See also id.* at 1226–27 ("special deference is given to pressing emergencies, and . . . certain police actions may involve a level of such urgency as to be considered discretionary and not operational").

Although the Florida Supreme Court has never applied the police-emergency exception, *see Rodriguez*, 117 So.3d at 407–08, the Third District has done so in a case that is similar to the one here.  In *Robles v. Metropolitan Dade County*, 802 So.2d 453 (Fla. 3d DCA 2001), a police officer shot at a man who had hijacked a school bus, and flying debris hit one of the children on the bus, causing him to lose

12

sight in one eye. At the time of the shooting there were 13 children and several adults on the bus, and the police had been told that the hijacker potentially had an explosive device. The officer who fired at the hijacker said he did so because he feared for his safety and the life of the children on the bus. *See id.* at 454. The child's parents sued the county, alleging that the officer had acted negligently in shooting at the hijacker under the circumstances. An expert for the parents opined that the officer, though confronted with an emergency, and faced with various courses of action—"each of which posed a potential threat to the public"—acted negligently in shooting at the hijacker. *See id.* The trial court nevertheless granted summary judgment in favor the county, ruling that it was entitled to immunity under the police-emergency exception, and the Third District affirmed. Applying *City of Pinellas Park*, the Third District concluded that the officer was faced with choosing between courses of action that would each put someone at risk: "'It is this choice between risks that is entitled to the protection of sovereign immunity in appropriate cases, because it involves what essentially is a discretionary act of executive decision making.'" *Id.* at 455 (quoting *City of Pinellas Park*, 604 So.2d at 1227).

In the absence of any conflicting case law from the Florida appellate courts, we follow *Robles* and apply the police-emergency exception. The officers here were confronted with an emergency and faced difficult choices, each of which presented risks to themselves, to the hostages, and to the public at large. We conclude,

13

therefore, that sovereign immunity shields the Sheriff from liability on the state-law battery and negligence claims.

## IV

Having found no grounds for reversal, we affirm the district court's grant of summary judgment to the Sheriff.

**AFFIRMED.**